UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| Danny Ray Nicholson, Sr. and | ) | Case No. 08-51339 |
| Patricia L. Nicholson | ) | |
| | ) | |
|    Debtors, | ) | |
| | ) | |
| _____ | ) | |
| Danny Ray Nicholson, Sr. and | ) | |
| Patricia L. Nicholson, | ) | |
| | ) | |
|    Plaintiffs, | ) | Adversary Proceeding |
|    v. | ) | |
| James B. Flowe, Sr. | ) | No. 09-06043 |
| | ) | |
|    Defendant | ) | |

**MEMORANDUM OPINION**

This adversary proceeding came on before the court for trial in Winston Salem, North Carolina on September 28, 2010 on the Debtors' Complaint asserting claims against James B. Flowe, Sr., the Defendant and a creditor in this case, pursuant to 11 U.S.C. § 547(b) and (d). The male Debtor, Danny Ray Nicholson, appeared at the trial along with his attorney, Neil Jonas. The Defendant appeared pro se at the trial. After considering the pleadings, evidence, and arguments of counsel, this Court makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure:

**PROCEDURAL BACKGROUND AND JURISDICTION**

The Debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on August 14, 2008 (the "Petition Date"). Since the commencement of the proceeding, the Debtors have continued as Debtors-in-Possession. On May 25, 2010, an Order Confirming the Debtors' Plan was entered by the court. On November 10, 2009, the Debtors filed a Complaint

objecting to liens that the Defendant placed on three of the Debtors' automobiles pursuant to 11 U.S.C. § 547(b) and (d). The Defendant responded with an answer filed on March 3, 2010. This court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), which this court may hear and determine.

## FINDINGS OF FACT

Over a period of time prior to the Petition Date, the Defendant, a long-time friend of Mr. Nicholson, made a series of loans totaling $150,000.00 to the Debtors. When the Defendant loaned the last $50,000.00, he expressed concern regarding his unsecured status. The Debtors responded by offering to use three of their automobiles as collateral. Accordingly, subsequent to the last disbursement of $50,000.00, the parties entered into a series of promissory notes and security agreements.

On October 1, 2007, Mr. Nicholson executed a promissory note in favor of the Defendant. The note stated that Mr. Nicholson was to pay the Defendant the principal sum of $30,000.00 with interest thereon at the rate of 6% per annum. On the same day, Mr. Nicholson executed a security agreement whereby Mr. Nicholson agreed to use his 1957 Chevrolet Bel Air as collateral to secure payment to the Defendant. The Defendant attempted to perfect his interest in the 1957 Chevrolet Bel Air by physical retention of the title to the vehicle and by placing a lien on such title on July 29, 2008, 16 days before the Petition Date. Also, because the Debtors did not need the vehicle for day-to-day transportation, the Defendant took possession of the vehicle. Since the Petition Date, the 1957 Chevrolet Bel Air has been returned to the Debtors.

On November 4, 2007, the Debtors executed a second promissory note in favor of the Defendant. The note stated that the Debtors were to pay the Defendant the principal sum of

$8,500.00 with interest thereon at the rate of 6% per annum. On the same day, the Debtors executed a security agreement whereby the Debtors agreed to use their 1999 Mercedes Benz as collateral to secure payment to the Defendant. The Defendant attempted to perfect his interest in the 1999 Mercedes Benz by physical retention of the title to the vehicle and by placing a lien on such title on July 9, 2008, 36 days before the Petition Date.

On January 16, 2008, the Debtors executed a final promissory note in favor of the Defendant. The note stated that the Debtors were to pay the Defendant the principal sum of $8,500.00 with interest thereon at the rate of 6% per annum. On the same day, the Debtors executed a security agreement whereby the Debtors agreed to use their 2003 Cadillac Escalade as collateral to secure payment to the Defendant. The Defendant attempted to perfect his interest in the 2003 Cadillac Escalade by physical retention of the title to the vehicle and by placing a lien on such title on May 14, 2008, 92 days before the Petition Date.

On the Debtor's Schedule D, the Defendant is listed as a secured creditor holding three separate claims. The first claim is for $8,500.00 and is listed as secured by a 1999 Mercedes 500 S with a value of $8,080.00. The second claim is for $8,500.00 and is listed as secured by a 2003 Cadillac Escalade with a value of $8,500.00. The third claim is for $30,000.00 and is listed as secured by a restored 1957 Chevrolet with a value of $30,000.00. Furthermore, on the Debtor's Schedule F, the Defendant is listed as an unsecured creditor with a $150,000.00 claim. The unsecured claim is not listed as contingent, unliquidated, or disputed.

At trial, the Defendant acknowledged that he postponed recording his interest in the three automobiles used as collateral. The Defendant did not feel it necessary to immediately record his interest in the vehicles because he physically retained the titles and believed that the Debtors would be acting fraudulently if they attempted to sell, trade, or borrow on the collateral. The

Defendant, both in his Answer to the Complaint and at trial, did not assert any defenses to the Plaintiffs' claims.

## DISCUSSION

Section 547(b) of the Bankruptcy Code states that:

> [T]he trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made–
>   (A) on or within 90 days before the date of the filing of the petition; or
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
>   (A) the case were a case under chapter 7 of this title;
>   (B) the transfer had not been made; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). In addition, § 547(f) states that "[f]or the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Finally, § 547(g) prescribes that "[f]or the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section. . . ." In the present case, all of the elements of §547(b) are satisfied regarding the liens on the 1957 Chevrolet Bel Air and the 1999 Mercedes Benz. However, all of the elements of § 547(b) are not satisfied regarding the lien on the 2003 Cadillac Escalade.

Elements (1), (2), (3), and (5) of § 547(b) are satisfied regarding the liens on all three vehicles. First, the placement of the liens on the automobiles was made for the benefit of the Defendant. Second, the liens were placed on the automobiles after the Defendant had loaned the

$150,000.00 to the Debtors. Third, the placement of the liens would have enabled the Defendant to receive more than he would have under Chapter 7. Fourth, at trial, the Defendant presented no evidence to rebut the presumption that the Debtors were insolvent at the time of the transfer. *See In re Miller and Rhoads, Inc.*, 146 B.R. 950, 955 (Bankr. E.D. Va. 1992) (stating that "[the] presumption requires preference defendants to come forward with evidence to rebut the presumption).

The difference in the treatment of the liens turns solely upon the fourth element of § 547(b), which requires that the transfer be made within 90 day of the filing of the petition. Here, the Debtors filed a voluntary petition on August, 14, 2008. Furthermore, the Defendant placed a lien on the 1957 Chevrolet on July 29, 2008, placed a lien on the 1999 Mercedes on July 9, 2008, and placed a lien on the 2003 Cadillac on May 14, 2008. Consequently, unlike the liens placed on the 1957 Chevrolet and 1999 Mercedes, the lien placed on the 2003 Cadillac falls outside the 90 day period.

Based upon the foregoing, the Defendant's liens on the 1957 Chevrolet and the 1999 Mercedes are preferential and are to be set aside, but the lien on the 2003 Cadillac is to be deemed valid. As the Defendant is permitted to retain the lien on the 2003 Cadillac, he is entitled to an unsecured claim in the amount of $133,035.00. This value represents the amount of the Defendant's unsecured claim listed on the Debtors' Petition, which was $150,000.00, less the value of the 2003 Cadillac at the time this Adversary Proceeding was initiated, which was $16,965.00.

The Court will enter a judgment consistent with the findings set forth in this Memorandum Opinion.

# SERVICE LIST

Danny Ray Nicholson
Patricia L. Nicholson
Debtors/Plaintiffs

Neil Jonas
W. Joseph Burns
Attorneys for Debtors/Plaintiffs

James B. Flowe
1999 Lithia Springs Road
Lincolnton, NC 28092-4174

Michael D. West
Bankruptcy Administrator